## J. W. BRADLEY v. THE STATE.

No. 13396. Delivered June 18, 1930.
Reported in 29 S. W. (2d) 781.

The opinion states the case.

*W. R. Parker* and *V. R. Parker,* both of Fort Worth, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—Offense, robbery with firearms; penalty, five years in the penitentiary.

The State's evidence sufficiently shows that appellant robbed State's witness Clayton at the point of a pistol, taking from him about $50.00 in money. Such testimony further shows that a man by the name of James was with appellant at the time and was again with him just prior to his arrest some few days later.

Appellant's theory and his evidence tended to show that State's witnesses were mistaken as to his identity and that he was at home the evening of the robbery. Without repeating all the testimony pro and con, suffice it to say that the guilt of appellant was made a closely contested issue.

Misconduct of the prosecuting attorney is presented in asking questions and in arguing the cases in the following particulars: While the wife of appellant was testifying on cross-examination, she was asked, "Where is James now" (referring to the James who was shown to be with appellant at the time of the robbery). Objection to this was sustained. Again it was asked, "Don't you know as a matter of fact that James was tried and convicted on Grant's testimony for robbing Grant?" Objection was again sustained. Again it appears by bill of exception that while the assistant district attorney was making his closing argument for the State, he used the following language: "Here is James, they don't want me to tell you where he is." Appellant filed a written charge asking that the jury disregard this argument, which was refused by the Court.

Appellant filed a motion for new trial alleging jury misconduct and that they received testimony prejudicial to appellant after their retirement and prior to agreeing on a verdict of guilty. In support of this five jurors were introduced as witnesses. Their testimony does not materially differ and sustains the allegations made. We quote literally a portion of the testimony of Juror Reese given on the hearing:

"After the jury had retired to consider their verdict we took a ballot, the result of the ballot was seven for conviction and five for acquittal. * * * Immediately after this ballot was taken a member of the jury by the name of Gray stated to the other jurors that the evidence had not been going on for thirty minutes until he had made his mind up that the defendant was guilty. This juror further stated that the defendant was a partner of C. W. James and that James had been recently tried, convicted and given a term of 25 years in the penitentiary for this same offense and that he was going to vote for 25 years and would stay out until the year of 1930. I said to this juror, 'You are a hell of a juror. You are disqualified to set on this case, if you knew those things when you got on the jury.' We discussed the evidence then for a while and on the next ballot the jury unanimously voted guilty. The statement made by the juror Gray did not influence me into voting for guilty."

Juror Gray did not deny this, nor did any other juror.

It appears in the record that James had not been convicted of the same offense for which appellant was tried but had in fact been convicted and sent to the penitentiary for another and different offense. The question asked by the State's attorney and the argument quoted above were calculated to impress the jury with the conclusion that appellant's partner in the crime had already been tried, sufficiently identified and given a term of years in the penitentiary, which he had accepted. If the aforesaid conduct of the State's attorney failed to get this improper matter clearly before the jury, Juror Gray came to their aid and completely furnished this information and more. His statement is to the effect that defendant and James were partners and that James had been tried for this same offense and been given a twenty-five year term in the penitentiary. The first part of this was entirely incorrect. The combined effect of all these matters must have been very prejudicial. Certainly they were not calculated or intended to benefit the appellant any. Under the mandatory provisions of the statute and of the authorities of this Court construing same, we will not speculate on probable injury to appellant arising from Gray's statement. The uniform holdings of this Court compel us to order a reversal. Brown v. State, 101 Tex. Crim. Rep. 639; Howell v. State, 94 Tex. Crim. Rep. 563; Art. 753, Subdivision 7, Vernon's Tex. C. C. P. (1925), and authorities there cited; Sparks v. State, 300 S. W. 938. It is a waste of time and space to bring up in the record statements of jurors that evidence received by them of the character noted above did not influence their verdict. The statute cited above cannot be thus abrogated.

For the error discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.